IN THE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION AT AKRON

_____

| | |
|---|---|
| **SHARON D. LAWRENCE**<br>1267 Honodle Avenue<br>Akron, Ohio 44305-3305<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>**OHIO DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES**<br>c/o Lori Criss, Director<br>30 East Broad Street, 36th Floor<br>Columbus, Ohio 43215-3430<br><br>　　　　　　　　　　Defendant, | Case No. _____<br><br>Hon. _____<br>United States District Judge<br><br>Hon. _____<br>United States Magistrate Judge<br><br>**COMPLAINT**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Sharon D. Lawrence ("Lawrence"), through her undersigned counsel of record, for her cause of action hereby alleges the following:

1. Lawrence is a resident of the City of Akron in Summit County, Ohio, is employed as a full-time Psychiatric/DD Nurse Manager for Heartland Behavioral Healthcare ("HBH"), a hospital located in Stark County and operated by Defendant Ohio Department of Mental Health and Addiction Services ("ODMHAS"). Lawrence is female and identifies as an African American.

2. ODMHAS is an agency of the State of Ohio with principal offices located at 30 East Broad Street, 36th Floor, in the City of Columbus, Ohio.

3. ODMHAS has more than 20 full-time employees, including more than 20 full-time employees assigned to HBH.

## JURISDICTION AND VENUE

4. This court has jurisdiction over the parties and the subject matter of this civil action under 28 U.S.C. §§ 1331 and/or 1367 inasmuch as Lawrence's claims for unlawful employment discrimination set forth in this complaint arise under the laws of the United States, *to-wit*, the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, as amended, and her other causes of action recited herein otherwise present claims that are so related to the claims over which this court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue for this civil action is proper in the Eastern Division of this court, sitting in Akron, by operation of 28 U.S.C. § 1391(b)(2) and Rules 3.8(a) and 3.8(b) of the Local Rules for the United States District Court for the Northern District of Ohio.

## COMMON ALLEGATIONS

6. Lawrence commenced her employment with ODMHAS in April of 1997 and was assigned to HBH in April of 2012.

*Race and Gender-Based Discrimination in the Work Setting*

7. Commencing in or about April of 2019, Lawrence complained to HBH management of ongoing disparate treatment that she and another female African American peer manager were experiencing in the work setting. Specifically, Lawrence asserted that a male Caucasian peer manager, Michael Dewitt, a/k/a "Mick" Dewitt ("Dewitt"), had been receiving favorable treatment

2

and consideration in respect of terms and conditions of employment that were intended to apply to all nurse managers.

8. Among the job-related issues that Lawrence called to management's attention were (a) the process by which HBH's Chief Executive Officer, Dave Coletti, and Nurse Executive, Steve Pessefall, selected Dewitt to serve as Interim Nurse Executive at ODMHAS's Toledo facility when Dewitt was not the most qualified and had not been performing relevant clinical nurse manager job assignments of the sort that Lawrence and the other female African American nurse manager had performed in a satisfactory manner before the temporary assignment was announced, (b) the fact that Lawrence and the other female African American nurse manager were more qualified and experienced at the time of the temporary assignment to fill the Toledo opening on an interim basis, and (c) the routine failure of the Nurse Executive to administer and enforce work rules and performance expectations in a uniform and equal fashion, irrespective of the gender and race of Dewitt, in that Dewitt's failure to discharge specific job duties and expectations of his position were routinely overlooked or unjustifiably excused while the Nurse Executive always strictly administered and enforced his announced work rules and performance expectations in reviews and other dealings with Lawrence and the other female African American peer manager, thereby favoring the Caucasian male peer manager to the two female African American counterparts.

9. In the course of her employment at HBH, the Nurse Manager did not hold Dewitt to the same performance standards expected of his female African American peer managers. For example, while Lawrence and her female African American peer manager were required to turn in, on a monthly basis, certain quality assurance/performance improvement "monitors" for many critical aspects of a psychiatric hospital's operation, including medication administration routines, medical record reviews, patient pain assessments, medical competency reviews for subordinate

nursing personnel, special observation log reviews, violence review initiatives, and other similar "monitors," the Nurse Executive **exempted** Dewitt from these strict requirements even though such tasks were considered by the Nurse Executive, in particular, and the healthcare service industry, in general, to be essential to any psychiatric hospital's operations.

10. The Nurse Executive required each of his Psychiatric Nurse Managers to conduct monthly meetings with all subordinate nursing and support staff to keep staff members informed of changes or additions to nursing policies and procedure on a regular basis and to alert such staff of updates or changes to nursing practice standards or expectations, all while providing all such personnel an opportunity to ask questions or share experiences or information with all staff members in attendance. Without a self-evident explanation or readily apparent justification, Dewitt was **exempted** from the directive that all nurse managers conduct such meetings even though he managed roughly one-third of the nursing staff. While Lawrence and her female African American peer manager were threatened with disciplinary action if they should fail, even once, to organize and conduct such meetings, the Nurse Executive, on information and belief, never required Dewitt to follow the directive given to Lawrence and her female African American peer manager or disciplined Dewitt in any way for not organizing such meetings.

11. The Nurse Executive required each of his Psychiatric Nurse Managers to attend committee meetings conducted by HBH's Medical Director or Director of Psychology. Such meetings were designed to update all management personnel respecting a wide variety of hospital-specific and practice-wide requirements and standards. Dewitt routinely **failed** to attend these committee meetings. Yet, Lawrence and her female African American peer manager were threatened with disciplinary action if even one such committee meeting would be missed. Indeed, Law-

rence's female African American peer manager was given a written reprimand by the Nurse Executive for her failure to attend a single meeting even though the Nurse Executive himself had assigned such peer manager to cover half of the facility due to a temporary staff shortage in the nursing management ranks.

      12. On one occasion, Lawrence was late for a nursing leadership meeting organized and conducted by the Nurse Executive due to the press of other hospital business that often forced certain managers to turn up late for these meetings. The Nurse Executive told Lawrence that her tardiness would be noted in her "work product file" for possible use in meting out discipline in the event of any other future perceived performance deficiencies and/or policy or procedure violations. To the best of Lawrence's knowledge and information, Dewitt was never subjected to equally harsh and unforgiving treatment.

      13. The Nurse Executive ordered all Psychiatric Nurse Managers to attend to unit-wide work assignments made by him personally. One such assignment required all nursing staff to make sure no patient had more than seven (7) changes of clothing in his or her possession and to winnow the closets of each patient having more than one change of clothing for each day of the week. Another such assignment required his Psychiatric Nurse Managers to install information boards on each unit and keep such boards current with postings of the results of meetings and hospital-wide quality assurance/performance improvement monitors. Lawrence and her female African American peer manager were held to account by the Nurse Manager in making sure such information boards were posted and kept up to date, the Nurse Executive never held Dewitt to account for his abject failure or refusal to follow such specific unit-wide job assignments.

      14. In April of 2019, the Nurse Executive attended a three-day off-site seminar. Standing policies and practices dictated that the senior-most Psychiatric Nurse Manager available

5

during his absence would serve in the capacity as Acting Nurse Executive until the Nurse Executive's return. Instead of following this practice, however, the Nurse Executive intentionally tapped a Nurse Supervisor, a Caucasian *subordinate* management team member, to serve as Acting Nurse Executive, thereby bypassing Lawrence, the senior-most available Psychiatric Nurse Manager, and deliberately leaving her out of the loop. This was a typical example of the Nurse Executive's race animus, as he routinely followed the same practice in tapping Dewitt for temporary Nurse Executive duties during absences even though both Lawrence and her female African American peer manager were more senior and available for duty and therefore, in accordance with standing policies and practices, should have been asked to assume the duties of Acting Nurse Executive in such instances.

15. Selecting Dewitt to serve as Acting Nurse Executive over other senior nurse managers resulted in the intentional pre-positioning of Dewitt to take on a Nurse Executive's role in a sister ODMHAS facility if such an opening should arise. From time to time, "temporary work level" ("TWL") assignments are made by ODMHAS to fill in during temporary or transition-based vacancies in the Nurse Executive's role at a facility. One of the advantages of serving as Acting Nurse Executive at HBH, therefore, was to give Dewitt a "leg up" when it came to management's consideration of candidates for permanent or TWL assignments in the Nurse Executive's role at HBH or any other sister ODMHAS facility. Thus, since the two more experienced, equally qualified, and longer-tenured African American female Psychiatric Nurse Managers on his staff were deliberately passed over for these temporary assignments in favor of Dewitt, the Caucasian male Psychiatric Nurse Manager, the Nurse Executive pre-positioned Dewitt for eventual temporary or permanent promotion and thereby made it more difficult for either of the two African American

female Psychiatric Nurse Managers on his staff to gain the same experience, and therefore the same advantage, that Dewitt was deliberately accorded.

*Retaliation in the Work Setting*

16. The Nurse Executive learned of Lawrence's intention to pursue a charge of discrimination and/or the actual commencement of the above-captioned charge around May 7, 2019, when Lawrence lodged an internal complaint with an EEO Compliance Officer of OD-MHAS. Such action by Lawrence constituted "protected activity" under 42 U.S.C. § 2000e-3(a) and O.R.C. § 4112.02(I).

17. Prior to May 7, 2019, the Nurse Executive adopted a policy of encouraging and actively responding to e-mail communications received from his direct reports, including Lawrence. Such an open line of communication with the Nurse Executive always is essential to a Psychiatric Nurse Manager when trying to do his or her job efficiently and comprehensively. When such a communication line is severed, the Psychiatric Nurse Manager is not updated on changes in policy or procedure, is deprived of warnings of changes or new expectations when it comes to internal operating processes, does not reap the benefit of routine access to her (or his) direct supervisor and/or confirmation that work underway or completed was done correctly or required further attention or improvement in the future, thereby threatening the Psychiatric Nurse Manager's job security with the increased risk that the lack of communication will prompt a failure to attend to hospital-related business on a timely basis and in a manner consistent with then-current HBH policies and procedures.

18. Once the Nurse Executive learned of Lawrence's dissatisfaction with the way he was preferring the male Caucasian Psychiatric Nurse Manager on his staff and the fact that Lawrence indeed had gone through with filing a charge of discrimination, he cut off Lawrence's

access to feedback and directives by way of e-mail transmissions, thereby compromising Lawrence's efforts to do her job efficiently and comprehensively, as she no longer enjoyed the same degree of access to her direct supervisor that she was supposed to get. Yet, the Nurse Executive did **not** cut off such e-mail access for any of Lawrence's peers.

19. Shortly after learning of Lawrence's decision to proceed with her charge of discrimination, a routine opportunity to make sure a Psychiatric Nurse Manager's paycheck was not shorted came up. Under prior practice, the Nurse Executive would make adjustments to a Psychiatric Nurse Manager's timesheets each week to make sure his direct reports would **not** suffer any shortage in the number of hours actually worked during a pay period by charging available vacation leave credits in such employee's payroll account unless the employee specifically requested that no such leave credits be used for such purpose. *Ms. Lawrence made no such request of the Nurse Executive.* Shortly after learning of Lawrence's commencement of her charge of discrimination, however, there came a pay period during which Lawrence was 4.90 hours shy of a full 80-hour paycheck. Indeed, Lawrence called this shortfall to the Nurse Executive's attention in writing to make sure he was aware that a routine charge to her vacation leave account was authorized by her to cover her 4.90-hour shortfall. Instead of using past practice and simply charging my client's vacation bank for these 4.90 hours, the Nurse Executive approved Lawrence's timesheet **without** making the routine adjustment, thereby punishing Lawrence by depriving her of 4.90 hours of pay. At her then-current rate of compensation, this resulted in leaving Lawrence short some $292.09 for the pay period ending August 3, 2019. As far Lawrence knows, no other direct report on the Nurse Executive's staff ever was subjected to the intentional shorting of his or her paycheck when vacation credit was banked and available unless the employee involved specifically asked that the bank not be tapped.

20. Lawrence filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 13, 2019, charging ODMHAS with having discriminated against her in respect of terms and conditions of employment on the basis of sex (Female) and her race (African American) and further charging ODMHAS with acts of unlawful retaliation. The EEOC designated Lawrence's charge as Charge No. 532-2019-02604 ("the EEOC Charge"). The EEOC terminated its investigation into the Lawrence EEOC Charge on October 20, 2020, and issued a right-to-sue notice to Lawrence on such date. Lawrence received such notice at her home on October 23, 2020, and her undersigned counsel received a copy of such right-to-sue notice on that same date. A copy of the EEOC Charge, as filed by Lawrence, and a copy of the EEOC's right-to-sue notice (with accompanying envelope bearing a postmark of October 21, 2020) are reproduced, respectively, in **Exhibit A** and **Exhibit B**, attached hereto and specifically incorporated by reference as if fully rewritten herein.

**COUNT ONE**
*Unlawful Employment Discrimination*
42 U.S.C. §§ 2000e, *et seq.*

21. ODMHAS is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

22. Lawrence falls within the definition of an "employee" of ODMHAS within the meaning of 42 U.S.C. § 2000e(f) and is a "complaining party" within the meaning of 42 U.S.C. § 2000e(*l*).

23. By engaging in the conduct described generally in Paragraphs 7 through 15, above, ODMHAS discriminated against Lawrence on the basis of her sex (Female) and her race (African American) (a) in violation of 42 U.S.C. § 2000e-2(a)(1) inasmuch as ODMHAS discriminated against Lawrence in respect of the terms, conditions, or privileges of her employment on the basis of her gender and/or her race and (b) in violation of 42 U.S.C. § 2000e-2(a)(2) inasmuch

as ODMHAS acted in such fashion as to deprive (or tend to deprive) Lawrence of employment and promotional opportunities or to affect the status she enjoyed as a Psychiatric Nurse Manager at HBH in an adverse fashion because of her sex (Female) and/or her race (African American).

24. By engaging in the conduct described generally in Paragraphs 16 through 19, above, ODMHAS unlawfully retaliated against Lawrence because she opposed practices made unlawful by Title VII of the United States Code or because she engaged in protected activity by making a charge against ODMHAS and participating in an investigation conducted in connection therewith, all in violation of 42 U.S.C. § 2000e-3(a).

25. As a proximate result of the acts of ODMHAS, as alleged in this Count One, Lawrence has suffered, and continues to suffer, damages of both an economic and non-economic nature in an amount exceeding Twenty-Five Thousand and No/100 Dollars ($25,000.00) for which ODMHAS is liable.  Additionally, ODMHAS is subject to an order of this court that shall enjoin HBH management, under penalty of contempt, from establishing and/or administering policies and procedures in such manner as to treat female and African American employees in a disparate fashion in respect of terms and conditions of employment, access to all privileges, benefits, and rights of employment, and/or promotional opportunities both of a permanent and a temporary nature and from establishing and/or administering policies and procedures in such manner as to retaliate against employees in respect of terms and conditions of employment, access to all privileges, benefits, and rights of employment, and/or promotional opportunities both of a permanent and a temporary nature after having engaged in protected activity of the sort safeguarded by 42 U.S.C. § 2000e-3(a), including (without limitation) entry of an order directing HBH management to instruct

all supervisory personnel to refrain from denying access to e-mail communication in the dissemination and sharing of day-to-day information regarding hospital operations, policies, procedures, and internal operating processes.

**COUNT TWO**
*Unlawful Discrimination in the Employment Setting*
O.R.C. §§ 4112.01, *et seq.*

1-25.  Lawrence hereby incorporates by reference as if fully rewritten herein all allegations set forth or referenced in Paragraphs 1 through 25 of this complaint.

26. ODMHAS, at all times relevant to this civil action, is an "employer" within the meaning of O.R.C. § 4112.01(A)(2).

27.  At all times relevant to this civil action, Lawrence fell within the definition of an "employee" within the meaning of O.R.C. § 4112.01(A)(3).

28.  By engaging in the conduct described generally in Paragraphs 7 through 15, above, ODMHAS discriminated against Lawrence on the basis of her sex (Female) and/or race (African American) in violation of O.R.C. § 4112.02(A).

29.  As a proximate result of the acts of ODMHAS, as alleged in this Count Two, Lawrence has suffered, and continues to suffer, damages of both an economic and non-economic nature in an amount exceeding Twenty-Five Thousand and No/100 Dollars ($25,000.00) for which ODMHAS is liable.  Additionally, ODMHAS is subject to an order of this court that shall enjoin HBH management, under penalty of contempt, from establishing and/or administering policies and procedures in such manner as to treat female and African American employees in a disparate fashion in respect of terms and conditions of employment, access to all privileges, benefits, and rights of employment, and/or promotional opportunities both of a permanent and a temporary nature.

**COUNT THREE**
*Unlawful Retaliation in the Employment Setting*
O.R.C. §§ 4112.02(I)

1-29. Lawrence hereby incorporates by reference as if fully rewritten herein all allegations set forth or referenced in Paragraphs 1 through 29 of this complaint.

30. The activities referenced in Paragraphs 16 through 19, above, and commencement of the EEOC Charge constituted protected activity safeguarded under Ohio law by operation of O.R.C. § 4112.02(I).

31. By engaging in the conduct generally described in Paragraphs 16 through 19, above, ODMHAS discriminated against Lawrence because she opposed unlawful discriminatory practices of the sort defined in O.R.C. § 4112.02.

32. As a proximate result of the acts of management personnel of HBH, as alleged in this Count Three, Lawrence has suffered, and continues to suffer, damages of both an economic and non-economic nature in an amount exceeding Twenty-Five Thousand and No/100 Dollars ($25,000.00), for which ODMHAS is liable. Additionally, ODMHAS is subject to an order of this court that shall enjoin HBH management, under penalty of contempt, from establishing and/or administering policies and procedures in such manner as to retaliate against employees in respect of terms and conditions of employment, access to all privileges, benefits, and rights of employment, and/or promotional opportunities both of a permanent and a temporary nature after having engaged in protected activity of the sort safeguarded by O.R.C. 4112.02(I), including (without limitation) entry of an order directing HBH management to instruct all supervisory personnel to refrain from denying access to e-mail communication in the dissemination and sharing of day-to-day information regarding hospital operations, policies, procedures, and internal operating processes.

**WHEREFORE**, having stated her cause of action, Plaintiff Sharon D. Lawrence demands that this court enter judgment in her favor and against Defendant Ohio Department of Mental Health and Addiction Services, granting the following relief:

(1) An award in favor of Lawrence and against ODMHAS on Count One, Count Two, and/or Count Three hereof in such amount(s) in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00) (U.S.) as shall fully and fairly compensate her for all economic and non-economic damages proximately caused by the wrongful acts and omissions of ODMHAS in discriminating against her on the basis of her sex and/ or race and enjoin ODMHAS, upon successful prosecution of her claims under Count One, Count Two, and/or Count Three hereof, in such manner as to require ODMHAS to refrain from establishing or administering policies or procedures at HBH in such fashion as to take Lawrence's sex or race into account or to retaliate against Lawrence for engaging in protected activity of the sort safeguarded by operation of 42 U.S.C. § 2000e-3(a) and/or O.R.C. § 4112.02(I);

(2) An order requiring ODMHAS (a) to direct management of HBH to include in Lawrence's personnel record such notations as may be required to reflect that she is to be given an equal number of opportunities to discharge the duties of Acting Nurse Executive as Dewitt has been given, (b) to require senior HBH management to make assignments to the role of Acting Nurse Executive to Lawrence and all other nursing staff members according to generally-accepted ODMHAS practices of offering such tasks, in order of seniority, to Psychiatric Nurse Managers making themselves available to accept such assignments, and (c) to order HBH management, under pain of contempt, to refrain from condoning acts of disparate treatment of Psychiatric Nurse Managers when it comes to administering and enforcing orders, making assignments, requiring tasks to be completed, and ignoring any Psychiatric Nurse Manager when he or she demonstrates abject disregard (and therefore insubordination) in respect of carrying out such directives;

(3) An award reimbursing Lawrence for all attorney fees and expenses incurred and/or advanced by or for her in successfully prosecuting the claims stated in this complaint, including (without limitation) such attorney fees and expenses as may be awarded by law or in equity in respect of her individual claims (including, without limitation, 42 U.S.C. §§ 1988 and/or 2000e-5);

(4) An order allowing Lawrence to recover from ODMHAS pre-judgment and post-judgment interest on the amount(s) awarded by this court in favor of Lawrence; and

(5) An order taxing the costs of this action against ODMHAS and providing for such other and further relief as this court may deem necessary, just, equitable, and appropriate in the circumstances.

*/s/ S. David Worhatch*
**S. DAVID WORHATCH**                                            0031174
Law Offices of S. David Worhatch
4920 Darrow Road
Stow, Ohio 44224-1406

330-650-6000 (Akron/Kent)
330-656-2300 (Cleveland)
330-650-2390 (Facsimile)
*sdworhatch@worhatchlaw.com*

**Counsel for Plaintiff**

**JURY DEMAND**

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, Lawrence hereby demands a trial by jury of all issues of fact joined by the pleadings filed in this matter.

*/s/ S. David Worhatch*
**S. DAVID WORHATCH**                                            0031174
Law Offices of S. David Worhatch
4920 Darrow Road
Stow, Ohio 44224-1406

330-650-6000 (Akron/Kent)
330-656-2300 (Cleveland)
330-650-2390 (Facsimile)
*sdworhatch@worhatchlaw.com*

**Counsel for Plaintiff**